FIRST PROFESSIONAL LEASING COMPANY, Plaintiff-Appellant, *v.* SAMUEL T. RAPPOLD, D. C., Defendant-Appellee.

(No. 12294;

Fourth District—November 14, 1974.

*Rehearing denied December 12, 1974.*

SMITH, P. J., dissenting.

Londrigan & Potter, of Springfield (Duane D. Young, of counsel), for appellant.

Horsley, Kimble, Lott & Surman, of Springfield, for appellee.

Mr. JUSTICE SIMKINS delivered the opinion of the court:

Plaintiff, First Professional Leasing Co., Inc., appeals from an order of the circuit court quashing service of summons upon defendant in an action filed for the amount due on an allegedly defaulted lease agreement. The sole issue is whether the trial court erred in refusing to assert jurisdiction. A resolution of this dispute requires an interpretation by this court of the Illinois long arm statute (Ill. Rev. Stat. 1971, ch. 110, section 17(1)(a)).

On November 3, 1972, plaintiff, an Illinois corporation, filed a complaint against defendant, Dr. Samuel T. Rappold, in the circuit court of Sangamon county seeking the amount due on an allegedly defaulted lease agreement executed October 28, 1971, in Springfield, Illinois, between plaintiff and defendant. A copy of said agreement was attached to the complaint. Service was personally served upon defendant, a California resident, in California on November 21, 1972. On January 18, 1973, defendant made a special appearance to contest the jurisdiction of the Illinois court. On March 20, 1973, a hearing was held to determine the jurisdictional issue. Coyn V. Richardson, vice-president of plaintiff corporation, testified that applications for leasing new equipment are received by his company, and a determination of the feasibility of such a transaction is then made. If prospects are favorable, forms and other information are then sent to the applicant who completes the forms

and mails them back to the company headquarters in Springfield, Illinois. Richardson stated that such a procedure was followed in regard to the instant lease. He further stated that this lease was approved and executed by plaintiff in Springfield after obtaining financing, was pledged to an Illinois bank, and an Illinois financing statement was filed. Richardson further testified that plaintiff did not solicit the lease in question and that all lease payments were to be sent to plaintiff in Springfield. On cross-examination Richardson testified that the application forms obtained by defendant came from a California lease broker. These brokers submit leases and are paid for such services by the plaintiff company. He further stated that defendant was not advised that the lease was pledged to an Illinois bank, that the financing statement was signed at the same time the lease was submitted to defendant for his signature, and that all transactions were by mail. Defendant in his affidavit alleged that he is a 9-year resident of California, maintains his occupation in California, and has never been physically present in Illinois for any transaction in connection with the present litigation. The lease agreement shows that defendant executed said lease in California. The equipment which was the subject matter of the lease was used solely in California and was purchased by plaintiff from a California distributor and resold to defendant in California. On April 3, 1973, the trial judge entered an order quashing the service of summons on defendant and found defendant to be not subject to the personal jurisdiction of the court.

Traditionally the presence of a potential defendant within the territorial jurisdiction of the court was a prerequisite before the court could assert in personam jurisdiction and bind the defendant personally to its judgment. That hallowed doctrine was first asserted by the United States Supreme Court in *Pennoyer v. Neff*, 95 U.S. 714. However, the due process limitations on the power of a state to subject nonresidents to in personam jurisdiction was greatly expanded by the Supreme Court in *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 90 L.Ed. 95, 66 S.Ct. 154, when the court stated that "due process requires only that in order to subject a defendant to a judgment in personam, if he be not present within the territory of the forum, *he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'*" (Emphasis added.) The "minimum contacts" contemplated in *International Shoe Co.* was further elaborated upon by the court in *Hanson v. Denckla*, 357 U.S. 235, 253, when it stated that "\* \* \* it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."

The new jurisdictional yardstick announced by *International Shoe Co.* and its progeny led to the adoption by the Illinois Supreme Court, in 1955 of what is now commonly referred to as the Illinois long arm statute (Ill. Rev. Stat. 1971, ch. 110, pars. 16, 17). Section 16 provides in relevant part:

> "(1) Personal service of summons may be made upon any party outside the State. If upon a citizen or resident of this State or upon a person who has submitted to the jurisdiction of the courts of this State, it shall have the force and effect of personal service of summons within this State ＊ ＊ ＊."

Section 17(1) further provides:

> "(1) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts herein-after enumerated, thereby submits such person, and, if an individual, his personal representative, to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of such acts:
>
> (a) The transaction of any business within this State;
>
> ＊ ＊ ＊
>
> (3) Only causes of action arising from acts enumerated herein may be asserted against a defendant in an action in which jurisdiction over him is based upon this section."

The Illinois Supreme Court has interpreted these two sections to "reflect a conscious purpose to assert jurisdiction over nonresident defendants to the extent permitted by the due process clause." *Nelson v. Miller*, 11 Ill. 2d 378, 389, 143 N.E.2d 673.

██ In the present case defendant was never physically present in Illinois. Relying on language in the Illinois Supreme Court case of *Grobark v. Addo Machine Co.*, 16 Ill.2d 426, 158 N.E.2d 73, the first district in *Saletko v. Willys Motors, Inc.*, 36 Ill.App.2d 7, 183 N.E.2d 569, held that physical presence by a defendant or its agent in Illinois is essential to the assertion of jurisdiction by an Illinois court under 17(1)(a). (Also see *Kropp Forge Co. v. Jawitz*, 37 Ill.App.2d 475, 186 N.E.2d 76 (1st Dist.).) Two years after *Grobark*, however, our supreme court in *Gray v. American Radiator & Standard Sanitary Corp.*, 22 Ill.2d 432, 176 N.E. 2d 761, held that physical presence in the state while committing a "tortious act" within the meaning of section 17(1)(b) is not necessary to subject the nonresident defendant to the jurisdiction of an Illinois court. Accordingly, the first district reversed its holdings in *Saletko* and *Kropp Forge Co.* when it held in *Koplin v. Thomas, Haab & Botts*, 73 Ill.App.2d 242, 219 N.E.2d 646, that physical presence was unnecessary under section 17(1)(a) in order to assert jurisdiction over a nonresident,

stating that no substantial reason existed for differentiating personal injury actions under section 17(1)(b) and business transactions under section 17(1)(a) insofar as physical presence of a defendant or his agent is concerned. We agree and hold that physical presence is unnecessary under section 17(1)(a). See also *Ziegler v. Hodges*, 80 Ill.App.2d 210, 224 N.E.2d 12 (2nd Dist.).

■■ We must now decide whether an exercise of jurisdiction in the instant case is constitutionally permissible, *i.e.*, whether there are sufficient "minimum contacts" to satisfy due process requirements. We believe that such contacts were present here, and the trial court erred in quashing summons and refusing to assert jurisdiction. We first note that the lease contract was executed in Illinois where it was signed and accepted by the vice-president of the plaintiff corporation thus constituting the last act necessary to give validity to the contract. Secondly, regardless of the status of the California lease broker, the record clearly shows that defendant contacted plaintiff in Illinois and applied for a loan, and that there was further preliminary communication by mail between plaintiff in Illinois and defendant in California before consummation of the agreement. Thirdly, the contract was pledged and the money for the equipment was provided by an Illinois bank. Fourthly, the contract was to be performed in Illinois through the remittance of rental payments by defendant to plaintiff in Illinois, and, in fact, some payments were so sent, thus constituting partial performance in Illinois. Fifthly, defendant signed an Illinois security agreement under the Illinois Commercial Code. We believe that these contacts satisfy due process requirements and an assertion of jurisdiction here would not offend "traditional notions of fair play and substantial justice." In so holding we take into consideration the language of our supreme court in *Nelson v. Miller*, 11 Ill.2d 378, 389, that our long arm statute *"reflects a conscious purpose to assert jurisdiction over non-resident defendants to the extent permitted by the due-process clause."* (Emphasis added.)

We further note that defendant here affirmatively sought the benefits and protection of Illinois law within the meaning of *Hansen v. Denckla, supra.* Certainly defendant knew plaintiff was an Illinois resident, knew that the contract was to be executed and performed in Illinois, and knew that he was signing an Illinois security agreement. Furthermore, because said contract was executed in Illinois and was to be performed in Illinois through the remittance of rental payments, any dispute arising under said contract would be decided under Illinois substantive law under traditional conflicts analysis. The court in *Ziegler v. Hodges*, 80 Ill.App. 2d 210, 224 N.E.2d 12, 15 (2d Dist.), indicated that the fact that Illinois law would be applicable to the dispute in question would be one factor

in determining the jurisdictional question. Furthermore, we note that if, after asserting jurisdiction, it becomes apparent that trial in an Illinois court is unduly burdensome for whatever reason, a *forum non conveniens* dismissal is always available. Indeed, in many instances the nonresident defendant will have the privilege of removal to a Federal court under 28 U.S.C. § 1441 (1970), and, after removal, a motion will lie under 28 U.S.C. § 1404(a) (1970) for transfer to a more convenient district. Nevertheless, Illinois courts certainly have a legitimate interest in providing a forum and redress for its residents when long-term lease contracts executed in Illinois, to be performed in Illinois, and in which Illinois law governs the resolution of any dispute, are breached by nonresidents.

Accordingly, the order of the circuit court of Sangamon county quashing service of summons upon defendant is hereby reversed, and the cause is remanded to the trial court for further proceedings consistent with the views expressed herein.

Reversed and remanded.

CRAVEN, J., concurs.

Mr. PRESIDING JUSTICE SMITH dissenting:

I do not believe that the facts we have accord in personam jurisdiction to Illinois. We must remember we are talking about "due process" and the criterion laid down for us by the United States Supreme Court is that the nonresident defendant must have "certain minimum contacts" with the forum state. The "contacts" we have here, in my opinion, are below the minimum.

The majority opinion states that the contract sued on was "executed in Illinois." This is true—if we are thinking about the law of contracts, and it is true too in a conflicts-of-law setting. But we are not thinking in those contexts. We are thinking about "minimum contacts" in a due process context, and in my opinion, this happenstance or circumstance is hardly an earth-shaking "contact." It takes two to make a contract, so the signing in California is just as important from a "contact" viewpoint as in Illinois, no more no less. That the last signature was affixed in Illinois may have great significance in a conflicts-of-law setting in determining where the contract was "executed," is to me, here, an immateriality. True, "defendant contacted" plaintiff in Illinois—by mail—and this is a "contact" in the sense that the Supreme Court used that word (though they used the plural) in a due process setting—but as I have said, it is hardly earth-shaking, and it is very much alone.

Unbeknownst to the defendant, the contract was pledged to a bank in

Illinois. I fail to see how this something plaintiff did in Illinois provides one more "contact" by a defendant in California with the forum state. Likewise, the remittal of payments from California to Illinois, while performance in a law-of-contracts context, can hardly be considered a "contact" in the sense in which the Supreme Court has defined it. What if the lease had been pledged in New York, or London—would that be a "contact" for the holder to assert jurisdiction there? Buyers of non-recourse commercial paper will find the majority opinion to their liking.

I am even more at a loss as to why the signing of an Illinois security agreement in California is a "contact." It may be that one can agree to be bound by the law of Illinois in signing such an agreement, but in doing so, he is not subjecting himself to the jurisdiction of the courts of Illinois. Rather, he is saying that the appropriate forum should apply the law of Illinois. In my opinion, courts of other states are as adept at applying our corpus as we are—though it may take a bit more time and study. And knowledge by defendant that plaintiff was an Illinois resident (which in fact he was) and knowledge that the contract was to be signed in Illinois (as it was), are not "contacts" in my opinion. Thus, while I might consider the arrival in Illinois of a contract from out of state to be a "contact," I do not believe that knowledge *qua* knowledge of these facts is what the Supreme Court was talking about when it said "contacts." Of course, if defendant had sued plaintiff in Illinois, jurisdiction is clearly here. Likewise, if plaintiff had sued in California. But that is not our case. The fact, too, that in the future the court here might be faced with a *forum non conveniens* problem doesn't seem to me to argue for jurisdiction—nor does possible removal to district courts sitting in Illinois, and here to add poignancy to this supposed reason, at the very threshold, is the lack of the jurisdictional amount. Under *International Shoe* we have to find "minimum contacts" so that the due process demand for fairness is answered. I do not believe that the facts here supply that answer. Accordingly, I dissent.