**BILTMOOR MOVING AND STORAGE COMPANY, a corporation, Plaintiff-Appellant,**

v.

**SHELL OIL COMPANY, a corporation and Great Southwest Warehouses, Inc., a corporation, Defendants-Appellees.**

No. 79–1381.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 10, 1979.

Decided Sept. 28, 1979.

Rehearing and Rehearing In Banc Denied Oct. 24, 1979.

Mark L. Bronson, Newman & Bronson, St. Louis, Mo., for plaintiff-appellant.

Steven P. Sanders, W. Stanley Walch, St. Louis, Mo., for defendants-appellees.

Before CASTLE, Senior Circuit Judge, SPRECHER and BAUER, Circuit Judges.

SPRECHER, Circuit Judge.

The issue on the appeal of this diversity action is whether the due process clause of the Fourteenth Amendment permits the defendants to be subjected to personal jurisdiction within the state of Illinois.

## I

Shell Oil Company is a Delaware corporation with its principal place of business in Houston, Texas. In 1974 and 1975, one of its divisions, Shell Development Company, relocated its laboratories and offices from locations in New Jersey, Illinois, California and Texas to the Westhollow Research Center in Houston, Texas.[1]

On February 14, 1975, Shell contracted with Great Southwest Warehouses, Inc., a Texas corporation engaged in the moving, storage and warehousing business with its principal place of business in Houston, Texas, to perform premove advisory services, packing, loading, transportation, unloading, placement and unpacking in order to consummate the relocation.[2]

The contract between Shell and GSW required that GSW provide supervision and advisory services for the relocation; that GSW provide a "dedicated supervisor or lead man to furnish liaison with Shell research staff . . . [who] should make himself available for training sessions or seminars in the use of packing materials for packing of laboratory instruments, apparatus, and related equipment"; and although "much of . . . [Shell's] packing will be accomplished by . . . [Shell's] research staff," GSW will "provide supervision" for premove packing, loading, transportation, unloading and unpacking.

The contract provided that "requests against this order will be made from the various locations and in particular [from] the Shell Move Coordinator or his authorized representative." The contract continued: "These coordinators and their particular locations, mailing addresses and phone numbers are as follows," listing eight coordinators at eight separate locations, including A. P. Texada at Wood River, Illinois, which is located across the Mississippi River from St. Louis, Missouri.

The contract also provided for the specific rates and charges by the hour and for overtime for the various classifications of labor required to perform the contract at Wood River. The contract included "a listing of railroad TOFC offices, representatives, phone numbers, routing instructions, and in addition, contacts for shuttle service as required" at Wood River and "a listing of Allied Van Line offices, representatives, phone numbers," including those at Wood River.

John H. Paige, Jr., who described himself as "a salesman employed by" GSW, nevertheless also attested that he "was responsible during 1974 and 1975 for negotiating and obtaining on behalf of GSW" the Shell contract. Paige "was also responsible during 1975 for negotiating and obtaining an agreement with Biltmoor Moving and Storage Company . . ., pursuant to which Biltmoor, as GSW's subcontractor, would provide the materials, services and labor required under" the Shell contract at the research facility at Wood River, Illinois.

Biltmoor, a Missouri corporation with its principal place of business in St. Louis, Missouri, was "considered [as one of the] subcontractors of Great Southwest Warehouse" as of March 21, 1975, when Alteration No. 1 (also described by Paige as the first amendment) to the Shell-GSW contract was executed.

The Shell-GSW contract referred to GSW as the contractor and included the following provisions relating to the scope of the contractor's performance:

Contractor . . . shall be fully responsible for all work performed by subcontractors. Contractor shall conduct all operations in Contractor's own name and

---

1. Shell Oil Company and Shell Development Company are referred to hereafter as "Shell."

2. Great Southwest Warehouses, Inc., also maintains offices in Georgia, Colorado and Washington and is referred to hereafter as "GSW."

as an independent contractor, and not in the name of or as agent for Shell.

\* \* \* \*

Contractor shall be solely responsible for all materials, equipment and work until the project is completed to Shell's satisfaction . . .

Contractor shall indemnify Shell against all loss or damage arising out of the negligence of Contractor or any subcontractor . . .

\* \* \* \*

Contractor shall maintain at all times the following insurances, with insurers satisfactory to Shell . . .

\* \* \* \*

Contractor . . . shall take and cause Contractor's and every subcontractor's employees, agents, licensees and permittees to take, all necessary precautions (including those required by Shell's safety regulations) to protect the premises and all persons and property thereon from damage or injury.

Shortly prior to the acknowledgment by Shell of Biltmoor as a subcontractor and on March 11, 1975, Joseph R. Eavenson, employed by Biltmoor, met with Paige of GSW, at the Shell facility at Wood River, where they were joined by Anderson, whom Eavenson recalled as the head of research and development for Shell, and by Texada, Orr and Baugh, employees of Shell. Eavenson's affidavit described the March 11 meeting as follows:

During the time Mr. Paige and I were at the Shell-Woodriver, Illinois plant, Mr. Paige discussed and explained the mechanics of the move at Woodriver and the manner and method by which Biltmoor would conduct the move at the Shell-Woodriver, Illinois plant. Mr. Paige and I walked through the plant and in essence walked through the various divisions and the entire move and Mr. Paige made suggestions, comments and criticisms with respect to the prototype crating which was to be used and gave instructions and directions pertaining to the manner in which the move was to take place at the Shell-Woodriver, Illinois site and assisted in providing coordination of the move with Biltmoor and Shell. Our discussion also included generally all phases and integral parts of the move including piggybacking, crating, labor, special materials and coordinated his thinking with mine. Our meeting was held while the moving work was in progress after the date of the February 14, 1975 contract and the addendum to the contract appointing Biltmoor as subcontractor came a week or two later. The meeting with Mr. Paige was specifically for the purpose of approval by GSW of the method of operation, and to instruct as to the operation, because in the following month the prototype of crates being built were put into use at the Woodriver, Illinois site for the purpose of shipment.

Biltmoor proceeded for more than eight months to perform under its contract in moving the Shell-Wood River facility. GSW paid Biltmoor $144,948.79, but Shell and GSW have refused to pay the balance claimed due by Biltmoor of $327,347.42.

Biltmoor brought suit against Shell and GSW in 1976 in the Eastern District of Missouri, Eastern Division. The suit was dismissed without prejudice on January 4, 1978, with the district court finding that the contract between Biltmoor and GSW was made in Texas and that no contacts relating to the contract occurred in Missouri sufficient to give the court jurisdiction under Missouri's Long Arm Statute. The court noted that "all the contacts were in Illinois."

Biltmoor filed the present cause in the Southern District of Illinois, Southern Division (now the Central District), where it was dismissed for lack of personal jurisdiction, based upon a magistrate's recommendation finding that GSW was not transacting business in Illinois under the Illinois Long Arm Statute. The magistrate relied primarily upon the fact that Biltmoor was not an Illinois resident and that GSW's representative spent only part of one day in Illinois.

Both the Missouri and Illinois district courts dismissed GSW for lack of personal jurisdiction and then dismissed Shell for failure to obtain jurisdiction over an indispensable party.

## II

The Illinois Long Arm Statute (Ill.Rev. Stat. c. 110, § 17) provides in pertinent part:

(1) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person . . . to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any such acts:

(a) The transaction of any business within this State; . . .

■ Inasmuch as the statute was intended to extend jurisdiction over non-residents to the fullest extent permitted by due process, *Nelson v. Miller*, 11 Ill.2d 378, 389, 143 N.E.2d 673, 679 (1957), our task is to determine whether extending the statute to Shell and GSW would comport with due process.

■ Due process requires only that in order to subject a defendant to personal jurisdiction, if he is not present within the territory of the forum, he have certain minimum contacts with that territory so that the maintenance of the suit does not offend traditional notions of fair play and substantial justice. A state's jurisdiction over a foreign corporation depends upon the existence of such contacts "as make it reasonable, in the context of our federal system of government, to require the corporation to defend the particular suit which is brought there." *International Shoe Co. v. Washington*, 326 U.S. 310, 316–17, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945).

■ The fact that none of the parties is a resident of Illinois is immaterial. Non-residents as well as residents of Illinois have access to Illinois courts and to the federal courts sitting in Illinois, provided that the due process standards of *International Shoe* are satisfied. *Scoville Manufacturing Co. v.*

*Dateline Electric Co.*, 461 F.2d 897, 900 (7th Cir. 1972).

■ It is also of little significance that a plaintiff, carrying on his usual business in Illinois, for that reason happens to perform in Illinois services which, under the particular contract at issue, could be performed outside the state. *Orton v. Woods Oil and Gas Co.*, 249 F.2d 198, 202 (7th Cir. 1957). In those circumstances it is the plaintiff's activities rather than the defendant's contacts with the state which determine where performance occurs. Consequently we have recently held that where the contract between the parties left the plaintiff in absolute control over where it could conduct the contractually required activity and where the plaintiff unilaterally decided to conduct that activity in the forum state, performance of the contract in the forum state did not give the forum jurisdiction over the defendant. *Lakeside Bridge & Steel Co. v. Mountain State Construction Co.*, 597 F.2d 596 (7th Cir. 1979). In so deciding, we expressed no opinion as to whether the result would be different if the contract required the plaintiff to perform in the forum state or if the nature of the plaintiff's contractual obligations made performance in the forum state necessary. *Id.* at 603 n.13.

In the present case, Shell was conducting business at its Wood River, Illinois, laboratory. In 1974 and 1975, it determined to relocate its laboratories and offices in four states to a single center in Houston, Texas. To accomplish the relocation it established a Shell move coordinator with several authorized representatives, including one at Wood River. Much of the packing at each laboratory including Wood River was to be accomplished by Shell's research staff. The research staff was also to train and to maintain liaison with the moving contractor's supervisor. Shell then contracted with GSW to act as its moving contractor. GSW in turn contracted with Biltmoor, a Missouri moving company, to act as a subcontractor for the Wood River, Illinois, relocation. The primary Shell-GSW contract provided that despite the appointment of subcontrac-

tors, GSW as contractor retained complete responsibility to Shell for the Wood River project; GSW indemnified Shell for all loss or damage at Wood River; GSW maintained insurance of all kinds relating to the Wood River project; and GSW was required to take all necessary safety precautions at Wood River.

The relocation move required the joint performance of Shell, GSW and Biltmoor at Wood River. Defendant Shell had been doing business in Illinois and participated substantially in the performance of the moving contract within Illinois. GSW and Biltmoor were non-residents who came into Illinois to perform the moving contract. The Illinois part of the contract took more than eight months to perform. Defendant GSW contended that its representative spent only one day in Illinois. This fact does not detract from the more important fact that GSW was primarily responsible for the performance of a contract that took more than eight months (presumably all or most of which in Illinois) to perform. In other words, the moving contract absolutely required substantial and lengthy performance within Illinois by Shell, GSW and Biltmoor. See *O'Hare International Bank v. Hampton*, 437 F.2d 1173, 1177 (7th Cir. 1971).

The lower court adopted the magistrate's determination that GSW's "only contact" with the state of Illinois was the meeting on March 11, 1975, which was held not to be "substantial and significant." The court dismissed GSW for lack of personal jurisdiction and Shell for lack of an indispensable party (GSW).

Illinois courts have held that despite the lack of physical presence within Illinois the long arm statute and due process permit Illinois courts to gain jurisdiction over a person or corporation who enters a contract knowing that it will be performed in Illinois. *Tabor & Co. v. McNall*, 30 Ill. App.3d 593, 333 N.E.2d 562 (1975); *First Professional Leasing Company v. Rappold*, 23 Ill.App.3d 420, 319 N.E.2d 324 (1974); *Colony Press, Inc. v. Fleeman*, 17 Ill.App.3d 14, 308 N.E.2d 78 (1974); *Cook Associates,*

*Inc. v. Colonial Broach & Mach. Co.*, 14 Ill.App.3d 965, 304 N.E.2d 27 (1973); *Ziegler v. Houghton-Mifflin Co.*, 80 Ill.App.2d 210, 224 N.E.2d 12 (1967).

Illinois courts have not always distinguished between situations where the contract requires performance in Illinois and situations where, although the contract is silent, the defendant knows in advance that performance will take place in Illinois. The distinction is immaterial in this case because this contract absolutely required performance in Illinois, satisfying the standards of both the Illinois cases and the language of this court in *Lakeside Bridge*, 597 F.2d at 603 n.13.

In addition to the fact that Shell, GSW and Biltmoor all substantially performed within Illinois, it would offend traditional notions of fair play and substantial justice if Shell, busily engaged in business in Illinois, could obtain lengthy services in Illinois from Biltmoor and then escape from Illinois by interposing a contractual intermediary between itself and Biltmoor. As we noted in *Honeywell, Inc. v. Metz Apparatewerke*, 509 F.2d 1137, 1144 (7th Cir. 1975):

> We look to the economic and commercial realities of this case, and in our view, it is not within the contemplation of the concepts of fairness and due process to allow a wrongdoing manufacturer to insulate himself from the long arm of the courts by using an intermediary . . .

Either we must believe the Shell-GSW contract which placed the whole responsibility for performance of the Wood River relocation squarely upon GSW or we are relegated to the position that the contract was largely meaningless and a sham to avoid Illinois involvement by Shell. If the latter, then we must view that contract as expressly denying that GSW was an agent for Shell, but designating, by amendment number 1, Biltmoor as an agent for GSW. As the manager for Shell Development Company stated in his affidavit, "Great Southwest, either directly or through its agents or subcontractors, performed the work contemplated" by the contract.

Illinois courts have recognized the performance of a party through an agent as satisfying long arm statute requirements.[3] *Lurie v. Rupe*, 51 Ill.App.2d 164, 201 N.E.2d 158, 162–63 (1964); *Kropp Forge Co. v. Jawitz* 37 Ill.App.2d 475, 186 N.E.2d 76, 79 (1962). See also, *Nortown Steel Supply Co. v. Northern Indiana Steel Supply Co.*, 340 F.2d 934, 935 (7th Cir. 1965).

Either GSW performed the contract in Illinois or did so through its agent Biltmoor. In either case, Illinois courts would hold that the long arm statute and due process provide jurisdiction and this court agrees.

The order appealed from is reversed and the case is remanded for trial.

Reversed and Remanded.

---

**3.** The language of the statute itself refers to doing certain acts in Illinois "in person or through an agent."