**J.J. & J. FOUNDATION COMPANY, INC., Plaintiff,**

v.

**TOMMY MOORE, INC., a corporation, d/b/a Fort Worth Tower Company, Defendant.**

No. 85 C 8830.

United States District Court, N.D. Illinois, E.D.

Aug. 1, 1986.

Joseph A. Wolsztyniak, Law Offices of Thomas D. Chase, Elgin, Ill. for plaintiff.

Patrick J. Phillips, Jenner & Block, Chicago, Ill., Bruce McGee, Gandy, Michener, Swindle, Whitaker & Pratt, Fort Worth, Tex., for defendant.

## MEMORANDUM OPINION AND ORDER

NORDBERG, District Judge.

Plaintiff, J.J. & J. Foundation Company, Inc. ("J.J. & J."), brings this diversity breach of contract action against defendant, Tommy Moore, Inc. ("Tommy Moore"), doing business as Fort Worth Tower Company, alleging that Tommy Moore has failed to pay J.J. & J. approximately $48,-600.00 for work J.J. & J performed for Tommy Moore in Illinois and other states. This matter is now before the court on Tommy Moore's Fed.R.Civ.P. 12(b)(2) motion to dismiss for lack of personal jurisdiction. For the reasons set forth below, the court grants Tommy Moore's motion to dismiss.

### I. Facts

J.J. & J. is an Illinois corporation with its principal place of business in Kane County, Illinois. Tommy Moore is a Texas corporation with its principal place of business in Fort Worth, Texas. Tommy Moore is not licensed to do business in Illinois, does not own property in Illinois, does not solicit business in Illinois, and does not maintain an office or registered agent in Illinois.

Tommy Moore is in the business of erecting microwave transmission towers throughout the United States. Tommy Moore typically hires independent contractors doing business in a particular locality to erect the towers. J.J. & J. is one such independent contractor. Tommy Moore arranged for J.J. & J. to perform certain cementing services for Tommy Moore on

job sites in Maryland, Florida, Texas, Ohio, Colorado, Wyoming and Illinois.[1] (Plaintiff claims $500 for the limited work performed in Illinois.) In making this arrangement, Tommy Moore did not solicit J.J. & J.'s business in Illinois. In fact, at no time did any Tommy Moore employee, agent or representative travel to Illinois to discuss, supervise or act in any way with regard to the transactions which form the basis of J.J. & J.'s complaint.

Instead, a representative of J.J. & J. traveled to Texas to propose an arrangement with Tommy Moore's representatives. The parties conducted all of the negotiations concerning the agreement, and entered into the agreement, in Texas. J.J. & J. then performed cementing services for Tommy Moore, but without Tommy Moore's supervision, in the various states.

Tommy Moore now moves to dismiss the complaint, alleging that this court does not have personal jurisdiction over it under either the Illinois long-arm statute, Ill.Rev. Code ch. 110 ¶ 2–209(a),[2] or the Due Process Clause of the Fourteenth Amendment. J.J. & J., on the other hand, contends that the court may properly exercise jurisdiction over Tommy Moore under the "transaction of business" provision in the Illinois long-arm statute and the Due Process Clause.

## II. Motion To Dismiss For Lack of Personal Jurisdiction

A federal court has personal jurisdiction in a diversity case only if the forum state would have jurisdiction. *Jacobs/Kahan & Co. v. Marsh*, 740 F.2d 587, 589 (7th Cir. 1984); Fed.R.Civ.P. 4(e). The plaintiff bears the burden of proving sufficient facts to support jurisdiction. *United States Railway Equipment Co. v. Port*

*Huron & Detroit Railroad Co.*, 495 F.2d 1127, 1128 (7th Cir.1974). Plaintiff's burden is two-fold: it must establish the existence of jurisdiction under Illinois law, and it must show that the exercise of jurisdiction over the defendant is consistent with Due Process as defined by prevailing constitutional standards. *Jacobs/Kahan*, 740 F.2d at 590; *Snyder v. Smith*, 736 F.2d 409, 415 (7th Cir.1984), *cert. denied*, 469 U.S. 1037, 105 S.Ct. 513, 83 L.Ed.2d 403 (1984).

In this case, J.J. & J. must establish that Tommy Moore is subject to this court's jurisdiction under the Illinois long-arm statute and the Due Process Clause. The Illinois Supreme Court has recently made clear that these two standards are not to be equated. *Cook Associates, Inc. v. Lexington United Corp.*, 87 Ill.2d 190, 196–99, 57 Ill.Dec. 730, 733–35, 429 N.E.2d 847, 850–52 (1981); *Green v. Advance Ross Electronics Corp.*, 86 Ill.2d 431, 436–37, 56 Ill.Dec. 657, 660, 427 N.E.2d 1203, 1206 (1981). The Due Process minimum contacts standard represents only the outer limit "beyond which a State may not go to acquire jurisdiction over nonresidents." *Cook Associates*, 87 Ill.2d at 197, 57 Ill.Dec. at 733, 427 N.E.2d at 850. A state may set its own limits within the parameters of the Due Process Clause, and Illinois has done so in its long-arm statute. *Id.* The court first considers whether jurisdiction is proper under the transaction of business provision of the Illinois long-arm statute.

### A. Personal Jurisdiction Under The Illinois Long-Arm Statute

■ J.J. & J. contends that Tommy Moore supervised J.J. & J.'s work, and the

---

1. The amount of money J.J. & J. claims is due from Tommy Moore in this suit includes amounts due for work performed on projects in all seven of these states.

2. Section 2–209(a) provides in relevant part:
   (a) Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person, and, if an individual, his or her personal representative, to the jurisdiction of the courts

of this State as to any cause of action arising from the doing of any such acts:
   (1) The transaction of any business within this State;

   .    .    .    .    .

   (c) Only causes of action arising from acts enumerated herein may be asserted against a defendant in an action in which jurisdiction over him or her is based upon this Section. Until July 1, 1982 this section was codified as Ill.Rev.Stat. ch. 110 § 17.

work of other independent contractors, in Illinois; therefore, J.J. & J. and other independent contractors acted as Tommy Moore's agents while working on the Illinois projects. Tommy Moore consequently "transacted business" in Illinois through its agents, J.J. & J. and other independent contractors. However, in a sworn affidavit attached to the motion to dismiss, Betty Moore, the Secretary-Treasurer of Tommy Moore, states that Tommy Moore had absolutely no control over the independent contractors which performed all of the work on the Illinois projects. The court therefore finds that the independent contractors, including J.J. & J., transacted business in Illinois for themselves, and not as agents of Tommy Moore. *See Biltmoor Moving and Storage Co. v. Shell Oil Co.*, 606 F.2d 202, 205, 208 (7th Cir.1979) (subcontractor was agent of general contractor for jurisdictional purposes where the general contractor directed and approved the subcontractor's activities). *Cf. Lewis v. Mount Greenwood Bank,* 91 Ill.App.3d 481, 46 Ill.Dec. 926, 414 N.E.2d 1079 (1980) (the issue of whether a contractor is an agent or an independent contractor turns on the principal's right to control the manner in which the work is to be done.)

**3.** In *Biltmoor,* the court properly equated the Illinois long-arm statute and Due Process Clause jurisdictional standards, following *Nelson v. Miller,* 11 Ill.2d 378, 389, 143 N.E.2d 673, 679 (1957). The Illinois Supreme Court later modified *Nelson,* to the extent that it equated the two standards, in *Green,* 86 Ill.2d at 436–37, 56 Ill. Dec. at 660, 427 N.E.2d at 1206. *See Jacobs/Kahan & Co. v. Marsh,* 740 F.2d 587, 590 (7th Cir.1984); *Snyder v. Smith,* 736 F.2d 409, 416 (7th Cir.1984).

Both *Madison* and *Lakeside* involved the Wisconsin, rather than the Illinois, long-arm statute. The court in both cases summarily held that the Wisconsin long-arm statute, Wis.Stat. § 801.05, authorized personal jurisdiction, and therefore focused on whether the Due Process Clause would permit the exercise of personal jurisdiction. *Madison,* 752 F.2d at 1195 n. 2; *Lakeside,* 597 F.2d at 600. The court notes that the Wisconsin long-arm statute authorizes the exercise of personal jurisdiction over defendants in cases such as the present case, subject, of course, to Due Process limitations. Section 801.05(5)(a) and (b) provide:

The question remains, however, whether Tommy Moore itself "transacted business" in Illinois by virtue of its entrance into a contract with J.J. & J., under which J.J. & J. was required to perform certain cementing services in Illinois, as well as other states. In a trio of recent cases, the Seventh Circuit has considered whether, when a defendant enters into a contract which the plaintiff is required to perform in the forum state, the defendant is thereby subject to the jurisdiction of the courts of the forum state. *Madison Consulting Group v. State of South Carolina,* 752 F.2d 1193 (7th Cir.1985); *Biltmoor,* 606 F.2d 202 (7th Cir.1979); *Lakeside Bridge & Steel Co. v. Mountain State Construction Co., Inc.,* 597 F.2d 596 (7th Cir.1979), *cert. denied,* 445 U.S. 907, 100 S.Ct. 1087, 63 L.Ed.2d 325 (1980). In all of these cases, however, the court considered whether jurisdiction by virtue of entrance into such an agreement would comport with the Due Process Clause, not the Illinois long-arm statute.[3] *Madison,* 752 F.2d at 1195 n. 2; *Biltmoor,* 606 F.2d at 206; *Lakeside,* 597 F.2d at 599. As pointed out above, the Illinois Supreme Court has held that the Illinois long-arm statute does not extend to the outer limits of the Due Process Clause. *Cook,* 87 Ill.2d at 196–199, 57 Ill.Dec. at 733–35, 429 N.E.2d at 850–52; *Green,* 86 Ill.2d at 436–37, 56 Ill. Dec. at 660, 427 N.E.2d at 1206.

A court of this state having jurisdiction of the subject matter has jurisdiction over a person served in an action pursuant to S. 801.11 under any of the following circumstances:

. . . . .

(5) *Local Services Goods or Contracts.* In any action which:

(a) Arises out of a promise, made anywhere to the plaintiff or to some 3rd party for the plaintiff's benefit, by the defendant to perform services within this state or to pay for services to be performed in this state by the plaintiff; or

(b) Arises out of services actually performed for the plaintiff by the defendant within this state, or services actually performed for the defendant by the plaintiff within this state if such performance within this state was authorized or ratified by the defendant....

The Illinois long-arm statute does not contain similar provisions.

■ This court now finds that a corporation does not "transact business" in Illinois when it merely enters into a contract which the plaintiff must perform in part in Illinois. It is well-settled that Section 2–209's "transaction of business" standard does not require that the nonresident defendant conduct business within Illinois regularly or systematically; a single act may be sufficient, as long as the cause of action arises from that act. *Jacobs/Kahan*, 740 F.2d at 591 n. 4; *Snyder*, 736 F.2d at 416. Courts have found the solicitation or negotiation of a contract in Illinois sufficient to constitute transaction of business under Section 2–209. *See, e.g., Jacobs/Kahan*, 740 F.2d at 590 (defendants' partial negotiation and execution of a contract while in Illinois constitutes the transaction of business); *Snyder*, 736 F.2d at 416 (defendant mailed a letter from Illinois exercising his option to purchase, and negotiated the purchase price in Illinois; therefore, defendant transacted business in Illinois).

However, no court has found that, where a defendant has not solicited, negotiated, or performed under the contract in Illinois, but the contract requires the plaintiff to perform in Illinois, the defendant has "transacted business" in Illinois under Section 2–209. The *Biltmoor* court cited several Illinois cases for the proposition that the Illinois long-arm statute and the Due Process Clause permit Illinois courts to gain jurisdiction over a person or corporation who merely enters into a contract knowing that it will be performed in Illinois. *Biltmoor*, 606 F.2d at 207. However, in all of these cases, the defendants had also solicited, negotiated or performed under the contract in Illinois.[4] This court therefore finds that a plaintiff's performance within Illinois, even if required under the contract, is not sufficient alone to support a finding that the defendant transacted business within Illinois pursuant to Section 2–209.[5]

### B. Personal Jurisdiction Under The Due Process Clause

The court need not consider whether jurisdiction based solely on the required performance of the plaintiff within Illinois is consistent with Due Process in light of its holding that such an exercise of jurisdiction is not authorized under Illinois law. *Jacobs/Kahan*, 740 F.2d at 589. However, the court finds that such an exercise of jurisdiction would not be consistent with the Due Process Clause.

Again, this court turns to the *Lakeside*, *Biltmoor* and *Madison* decisions. In *Lakeside*, defendant Mountain State contracted to buy structural assemblies for use in a Virginia dam from Lakeside. The only contacts Mountain State had with Wisconsin, the forum state and Lakeside's state of incorporation and principal place of

---

**4.** In *Tabor & Co. v. McNall*, 30 Ill.App.3d 593, 333 N.E.2d 562 (1975), the court found that the defendant and plaintiff negotiated the contract by way of phone calls between Wisconsin and Illinois, and the *defendant* was to perform the contract (deliver grain to plaintiff) in Illinois. Therefore, the defendant company transacted business in Illinois. The court in *First Professional Leasing Company v. Rappold*, 23 Ill. App.3d 420, 319 N.E.2d 324 (1974), found that the contract was executed in Illinois, defendant had solicited the contract in Illinois, and *defendant* was to perform the contract (send rental payments to plaintiff) in Illinois; therefore, defendant transacted business in Illinois. The defendant in *Colony Press, Inc. v. Fleeman*, 17 Ill.App.3d 14, 308 N.E.2d 78 (1974), initiated the business transaction in Illinois, and took delivery of the goods in Illinois. Similarly, the defendant in *Cook Associates, Inc. v. Colonial Broach & Machine Co.*, 14 Ill.App.3d 965, 304 N.E.2d 27 (1973), initiated the business transaction, and was required to pay the fee, if due, to the plaintiff, in Illinois. Finally, in *Ziegler v. Houghton-Mifflin Co.*, 80 Ill.App.2d 210, 224 N.E.2d 12 (1967), the defendant solicited the contract in Illinois.

**5.** The court notes that J.J. & J., whose burden it is to prove sufficient facts to support jurisdiction, has not made any allegations, or presented any evidence, regarding Tommy Moore's primary contracts to build microwave transmission towers in Illinois, which this court presumes, for the sake of argument, exist. However, even if J.J. & J. could plead and prove that Tommy Moore solicited or negotiated such contracts in Illinois, the question would remain whether J.J. & J.'s claims in this action "lie in the wake of" such contracts. *Jacobs/Kahan*, 740 F.2d at 591.

business, consisted of mailing a purchase order and other letters to, and telephoning, Lakeside's Wisconsin office, and Lakeside's performance of the contract there. Lakeside, rather than Mountain State, solicited the subcontract for the structural assemblies at Mountain State's West Virginia office.

The *Lakeside* court found Mountain State's contacts with Wisconsin insufficient to meet the due process minimum contacts standard. In so holding, the court referred to the Supreme Court's language in *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S.Ct. 1228, 1239, 2 L.Ed.2d 1283 (1958) (citations omitted):

> The unilateral activity of those who claim some relationship with a nonresident defendant cannot satisfy the requirement of contact with the forum State. The application of that rule will vary with the quality and nature of the defendant's activity, but it is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

The court found that Mountain State had not purposely availed itself of the privilege of conducting activities within Wisconsin, because "[a]lthough Mountain State in a sense caused the activity in Wisconsin by placing the order, the contract between the parties left Lakeside in absolute control over where it would conduct that activity, and it made this decision and conducted the activity unilaterally." *Lakeside*, 597 F.2d at 603. In a footnote, the court stated that it "express[ed] no opinion on whether the result would be different if the contract required the plaintiff to perform in the forum state or if the nature of the plaintiff's contractual obligations made performance in the forum state necessary. *Lakeside*, 597 F.2d at 603 n. 13.

The Seventh Circuit appeared to express an opinion on this issue in *Biltmoor*. There, defendant Great Southwest Warehouses, Inc. ("GSW") contracted to help co-defendant Shell Oil Company ("Shell") relocate its laboratories and offices from locations in New Jersey, Illinois, California and Texas to a central laboratory and office in Houston, Texas. GSW subcontracted the work of moving the Illinois laboratory to plaintiff Biltmoor Moving and Storage Company ("Biltmoor"). Under its primary contract with Shell, GSW remained completely responsible to Shell for the Illinois move, which meant that GSW had to indemnify Shell for loss or damage, maintain insurance for the move, and take all necessary safety precautions for the move. *Biltmoor*, 606 F.2d at 206–07. Under the subcontract with Biltmoor, GSW controlled the manner and method by which Biltmoor would conduct the move. *Biltmoor*, 606 F.2d at 205.

Despite the fact that GSW's only physical presence in Illinois consisted of one meeting at the Shell Illinois laboratory between representatives of Shell, GSW and Biltmoor, the court found the exercise of personal jurisdiction over GSW to comport with due process. The court based its finding on the fact that GSW, either directly, or through its agent Biltmoor, had to perform the primary contract between Shell and GSW in Illinois. *Biltmoor*, 606 F.2d 202, 207–08.

By virtue of the primary contract, the *Biltmoor* court did not have before it, and therefore did not directly answer, the question left open in *Lakeside*. *Lakeside* left open the question whether a defendant, who merely enters into a contract which the *plaintiff* must perform in the forum state, can be considered to have purposely availed itself of the privilege of conducting activities within the forum. The question presented in *Biltmoor* was whether a defendant, who enters into a contract which the *defendant* itself, or its agent, must perform in the forum, can be considered to have purposely availed itself of the privilege of conducting activities within the forum. Therefore, *Biltmoor*, although refer-

ring to *Lakeside*, did not actually address the question left open in *Lakeside*.[6]

Finally, in *Madison*, nonresident defendants hired plaintiff, a Wisconsin partnership, to prepare a study and report for the Federal Energy Regulatory Commission on various economic issues concerning South Carolina's North Dam. Defendants initiated the negotiations leading to their contact with plaintiff, and paid for one of plaintiff's partners to come to Washington, D.C. to discuss the project. Plaintiff completed most of the work under the contract in Wisconsin, as expected. A fee dispute later developed, and plaintiff sued defendants for breach of contract. Defendants moved to dismiss for lack of personal jurisdiction.

In analyzing the due process issue, the court started with the *Lakeside* decision, and then exhaustively reviewed recent decisions from the Supreme Court and Seventh Circuit regarding due process and personal jurisdiction. The court concluded that, first, although plaintiff's performance in the forum was expected in light of the fact that plaintiff's only office was in the forum and time was of the essence under the contract, it was not necessary or required. Therefore, defendant was not subject to the court's jurisdiction by virtue of plaintiff's performance in the forum. *Madison*, 752 F.2d at 1201–02.

Second, the court concluded that, unlike the defendant in *Lakeside*, here, the de-fendants had actively solicited the services of plaintiff, and "defendants' contacts in connection with the solicitation of plaintiff [were] pervasive and significant enough to justify personal jurisdiction." *Madison*, 752 F.2d at 1203 n. 18. The court was careful to point out that its holding did not attach "controlling significance" to one factor, namely, which party solicited the contract. *Id.* The court considered other factors, such as plaintiff's performance of the contract in the forum, the inconvenience that might result if plaintiff were compelled to bring the suit in another forum, and the accessibility of evidence relevant to the suit. *Madison*, 752 F.2d at 1204. The court also recognized that "the defendant's burden is 'always a primary concern' in the due process analysis ... but it is determinative exclusive of other factors only in those cases where there is 'an egregious absence of contracts, ties or relations between the defendant and the forum state.' " *Madison*, 752 F.2d at 1204 (citations omitted).

■ In the present case, there is an egregious absence of contacts between the defendant and the forum state.[7] Tommy Moore does not regularly conduct business in Illinois, its representatives have not entered Illinois in connection with the contract at issue in this case, and J.J. & J. initiated the negotiations leading to the contract between the parties. Also, as set out above, Tommy Moore did not control or

---

**6.** In so holding, this court respectfully disagrees with the *Madison* court's characterization of the *Biltmoor* case:

> Less than six months after *Lakeside* was decided, the court was compelled to decide the question expressly reserved in *Lakeside*, 597 F.2d at 603 n. 13: whether jurisdiction over a defendant is proper when the contract at issue requires plaintiff to perform in the forum. *See Biltmoor Moving and Storage Co. v. Shell Oil Co.*, 606 F.2d 202 (7th Cir.1979). The court answered in the affirmative, upholding personal jurisdiction in Illinois where the plaintiff, a moving company, had agreed to help the defendant relocate some of its facilities from Illinois to Texas. Under these circumstances, the court held that "the moving contract absolutely required substantial and lengthy performance with Illinois" *by all parties* to the contract. *Id.* at 207.

*Madison*, 752 F.2d at 1200 (emphasis added). The plaintiff in *Biltmoor* did indirectly agree, through a subcontract with defendant GSW, to help defendant Shell move its facilities from Illinois to Texas. However, the question in *Biltmoor* was not whether the court had personal jurisdiction over Shell, but whether the court had personal jurisdiction over GSW. In answering this question, the *Biltmoor* court looked to the primary moving contract, which required the performance of GSW, or its agent, in Illinois, not the subcontract between GSW and Biltmoor.

**7.** Again, this court notes that J.J. & J. did not plead any facts regarding any primary contract, which this court assumes must exist. *See supra* n. 5.

direct the work of J.J. & J., or any of the other independent contractors, in Illinois. The only contact between Tommy Moore and the forum, therefore, was J.J. & J.'s required performance there.

Under *Madison*, this contact alone would justify the court's exercise of jurisdiction over Tommy Moore. Strangely enough, although the *Madison* court emphasized that solicitation was not a controlling factor, it accepted, without analysis, that required performance by the plaintiff in the forum is, alone, a controlling factor which will establish jurisdiction over a defendant. *Madison*, 752 F.2d at 1200–01. To be sure, in many cases, when a defendant enters into a contract which the plaintiff is required to perform in the forum, the defendant will have taken other actions, by which, in addition to entrance into the contract, it has purposely availed itself of the privilege of conducting activities within the forum. However, as the present case indicates, there may be instances where the plaintiff's required performance is the defendant's sole contact with the forum. In such a case, given the Supreme Court's recent emphasis on preventing inconvenient litigation through a "broad-ranging reasonableness test, considering not only the burden on the defendant, but a variety of other relevant factors," *Madison*, 752 F.2d at 1199, a single factor test seems inappropriate and unfair.

This court also finds the *Madison* court's distinction between contracts which require performance in the forum, and those which effectively deny the plaintiff the "purely theoretical opportunity" to perform the contract in another forum, strained. Under *Madison*, defendants which enter the first type of contract are automatically subject to the forum court's jurisdiction, while defendants which enter the second type of contract may or may not be, depending on the court's analysis of a series of factors, including the defendant's entrance into the contract. *Madison*, 752 F.2d at 1204. In setting up such a two-pronged analysis, the *Madison* court effectively distinguished between contracts for goods and services, despite its disclaimer. *Id.* ("Nevertheless,

we do not recognize any inherent distinction between goods and services contracts for purposes of due process. Such a distinction would be difficult to administer because of the substantial definitional overlap between contracts for 'goods' and 'services,' and thereby would mire our analysis of personal jurisdiction in a number of largely irrelevant factors.") In reality, a contract for a plaintiff's services in a forum obviously requires the plaintiff to perform there. A contract to buy the plaintiff's goods, however, never requires performance in any particular forum, unless explicitly set out by the parties in the contract. Therefore, a defendant which enters into a contract for a plaintiff's services in the forum is automatically subject to the forum court's jurisdiction, despite the complete lack of other contacts between the defendant and the forum. If the same defendant contracts to buy a plaintiff's goods, it is not automatically subject to the court's jurisdiction unless the contract states that plaintiff must manufacture and deliver the goods in the forum. If the contract for goods does not so provide, the forum court's jurisdiction will depend on an analysis of several factors.

This court considers the better practice to be the application of the "fact intensive fairness inquiry," *Madison*, 752 F.2d at 1199, in all cases, whether the plaintiff's performance in the forum is merely expected or absolutely required. Such an inquiry in this case reveals that J.J. & J.'s limited performance in Illinois is the only contact with Illinois claimed of Tommy Moore. Were the court to find personal jurisdiction on this basis, Tommy Moore's burden would be great, not only by virtue of having to litigate in Illinois, but also because such a ruling would render Tommy Moore subject to suit in all seven of the states in which J.J. & J. performed services for defendant Tommy Moore. Therefore, the court finds that the relationship between Tommy Moore, Illinois and the litigation does not justify personal jurisdiction under the Due Process Clause of the Fourteenth Amendment.

### Conclusion

For the reasons stated above, the court finds that it may not properly exercise personal jurisdiction over Tommy Moore under Illinois law or the Due Process Cause. The court therefore grants Tommy Moore's motion to dismiss for lack of personal jurisdiction.