OSCAR LEWIS *et al.*, Plaintiffs-Appellees and Cross-Appellants, *v.*
MOUNT GREENWOOD BANK, Defendant-Appellant and Cross-Appellee.

First District (2nd Division)    Nos. 79-1936, 79-2422 cons.

Opinion filed December 2, 1980.

John T. Duax, of Chicago (Drucker & Duax, Ltd., of counsel), for appellant.

Walter M. Ketchum, Ltd., and James R. Madler, both of Chicago (Paul E. Peldyak and James R. Madler, of counsel), for appellees.

Mr. JUSTICE HARTMAN delivered the opinion of the court:

Robert Lewis (Robert), owner of a trucking business, his brother Oscar Lewis (Oscar), owner of a truck tractor, and Econ, Inc. (Econ), owner of a cargo being hauled by Robert, brought suit against defendants

Mount Greenwood Bank (Bank) and Area Truck and Trailer Equipment Co., Inc. (Area), alleging that the defendants, individually or jointly, through their agents wrongfully seized two trailers belonging to Robert, the tractor belonging to Oscar, and cargo belonging to Econ on May 18, 1973; and wrongfully seized a trailer belonging to Robert and cargo belonging to Econ on September 25, 1973. A jury verdict of $6,500 compensatory damages and $20,000 punitive damages was returned in favor of Oscar against the Bank and a verdict was returned in favor of the Bank and Area and against Robert and Econ, on which judgments were entered. The Bank appeals in No. 79-1936 and Robert cross-appeals in No. 79-2422.

The issues raised by the Bank are that the trial court erred in denying its motion for judgment notwithstanding the verdict, based upon evidentiary grounds, and in denying its motion for a mistrial, based upon misconduct of plaintiffs' counsel. The issue raised in Robert's cross-appeal is based upon the trial court's denial of his post-trial motion for a new trial, also evidentiary-based. Neither Econ nor Area are parties to this appeal. For the reasons set forth below, we reverse the judgment in favor of Oscar Lewis and against the Bank, and affirm the judgment in favor of the Bank and against Robert Lewis.

We set forth only that evidence which bears upon the disposition of this appeal. Plaintiffs' evidence reveals that in 1972, Oscar purchased a 1965 Dodge tractor for $6,500, which he allowed Robert to use in his business. According to Oscar, in September of 1973, Robert had possession of the tractor until it was at that time repossessed. About one year later, a mechanic, Julius Hudson, repaired damages the tractor received during the repossession. Richard Parker, employed by Robert as a truck driver on September 24, 1973, drove Oscar's 1965 Dodge tractor, when he picked up a cargo of steel from Rolled Steel Corporation. He returned with the cargo to Robert's place of business at the intersection of Madison and Washtenaw Streets in Chicago, and parked there without disengaging the tractor and trailer. Julius Hudson inspected Oscar's Dodge tractor in September 1973 at 2700 W. Madison, and observed that the engine had been overheated, requiring a major overhaul. He repaired the tractor in 1972 or 1973 but was not sure.

Robert testified that in 1972 and 1973, he was in the trucking business, owned three trailers and used his brother Oscar's 1965 Dodge tractor in the business. The trailers were purchased from Area under retail sales installment contracts, which were assigned to the Bank. In April of 1973, he called the Bank and told Ted Altman that he would be a little late with payments due on certain of the Bank contracts on which the trailers were security. Altman told him he saw "no problem." The following day a trailer disappeared. Robert went to Area where he met with Harold

Wymer, the Area salesman who had sold him all three trailers. Wymer told him that he would have to pay Area $1,000 to get the trailer back.[1] After he paid the $1,000 to Wymer the trailer was returned to him. On September 24, 1973, he saw this trailer hooked up to Oscar's tractor parked at his place of business. The next morning, after receiving a call from his driver indicating that the tractor and trailer were missing, he called the police and reported the theft. Upon advice of the police, he called the Bank and spoke with Altman, who told him that he had taken the trailer.

Robert then spoke with Wymer, at Area, who told him that the trailer was there. He drove to Area and told Wymer that the tractor had been damaged during the repossession, and Wymer said "that's Shannon." He then went to a police pound on 16th Street and Laramie Avenue, where he examined the tractor. The ignition was hanging out, the window was broken, and it wouldn't start. He had it towed to 2700 W. Madison, where Julius Hudson inspected it and said the engine was "seized up" and needed an overhaul. Because he was unable to afford the work then, it was about nine or 10 months later when Hudson ultimately performed the repairs, for which he paid.

On cross-examination by the Bank, Robert acknowledged not making loan payments in February, May, August or September of 1973. On cross-examination by Area, Robert testified that during May of 1973 he was several payments behind and the Marshall and Madden trailers were repossessed. After the September disappearance of the tractor and trailer, he found the tractor around 16th and Laramie in a pound. Secretary of State personnel told him that it had been reported stolen.

Robert Alexander, an assistant vice president of the Bank, called by plaintiffs as an adverse witness, testified that he was not employed by the Bank in 1973, and had no direct knowledge of the transactions at issue. His testimony was limited to 1973 bank records of various repossessions of Robert's trailers. In May of 1973, two of Robert's trailers were repossessed for nonpayments. One contract, secured by a 1965 Marshall trailer, had a balance owing of $2,267.86, on which the $116.75 monthly payments for March, April and May of 1973 had not been made. A second contract, secured by a 1969 King Madden trailer, had a balance owing of $2,962.54, on which payments of $155.66 had not been made for April and May of 1973. A third contract, secured by a 1973 Transcraft trailer, had a balance owing of $5,150.25, on which two payments of $147.15 had not been made. In May of 1973, Ted Altman, the Bank's collection manager, had ordered repossession of these trailers. On examination by the Bank,

---

[1] Under the terms of the assignment from Area to the Bank, Area guaranteed full payment of the debts to the Bank.

Alexander testified that the three contract balances due were never paid and the Bank never received the three trailers. On cross-examination he testified that those balances were ultimately reduced to a judgment of approximately $9,000 against Robert. The bank records indicated that the Transcraft trailer had been sold, but it did not indicate to whom. The balance on that contract was paid by Area, but this did not mean that Area was the purchaser. On the other two contracts, balances were still owing.

The Bank's motions for a directed verdict at the close of plaintiffs' case were denied and it then presented its case. Daniel Shannon, a self-employed financial adjuster, testified that in May of 1973, he was retained by the Bank to bring Robert's delinquent account up to date. After unsuccessfully attempting to contact Robert, he located and took possession of two trailers. A tractor was attached to one of them. Chicago police were then present, a usual procedure according to Shannon. The license plates on the tractor and trailer were checked; the former had fictitious plates. He notified a Secretary of State investigator, who then took the tractor into his custody. The investigator removed the tractor to Cicero and Laramie. Shannon thereafter delivered the two trailers to Area. He did not personally take the tractor, although he had earlier stated that he took "the whole thing." He exercises his own discretion as to how to accomplish a repossession; his clients do not give him those details. No one from the Bank or Area was present during the repossession. On cross-examination, Shannon testified that it was May of 1973 when he performed the repossession. Although subpoenaed, he failed to bring his records from May of 1973, stating he was not a very good record keeper.

Frank Wolf testified that in 1973 he was a repossessor for All Auto Recovery. In the summer of 1973, the Bank and Area had given All Auto lists of vehicles to repossess. On September 26, 1973, he located a detached Transcraft trailer belonging to Robert, on Area's list, at 106th and Indianapolis, which he brought to Area.

In rebuttal, Robert testified that he found the tractor in an open lot at 16th and Laramie. On cross-examination by the Bank, he stated he did not know, but was told, that it was a Secretary of State lot. His attention was then drawn to his signed and sworn complaint in which he alleged that Oscar's tractor was repossessed in May of 1973, whereas at trial he testified the tractor was damaged in September of 1973. He responded that it was either in May or September. On cross-examination by Area, he repeated he wasn't sure whether the tractor was seized in May or September.

Henry Slawinski, a Chicago policeman employed in the records division of the police department, found no record of a repossession of a trailer owned by Robert. There is no regulation requiring the assignment

of police officers to a repossession. On cross-examination, he testified that reports are not made every time police officers are called to observe a repossession.

The jury thereafter rendered the verdicts, and the trial court entered the judgment first mentioned above, from which this appeal and cross-appeal proceeds.

The Bank asserts that judgment notwithstanding the verdict should have been granted on several grounds, citing the oft-quoted standard of *Pedrick v. Peoria & Eastern R.R. Co.* (1967), 37 Ill. 2d 494, 510, 229 N.E.2d 504, that verdicts ought to be directed and judgments *n.o.v.* entered only in those cases in which all of the evidence, when viewed in its aspect most favorable to the opponent, so overwhelmingly favors the movant that no contrary verdict based on that evidence could ever stand, claiming that this was one of those cases. Among the Bank's contentions is that plaintiffs failed to prove the actions of the Bank or Shannon, its contractor, to have actually caused the damage. It was plaintiffs' theory that Shannon broke the tractor's window in order to "hot-wire" the tractor to release the brake so that it could be separated from the trailer to be repossessed. Plaintiffs conclude that because the tractor was found the next day in a damaged condition, requiring an overhaul, the inference is available that Shannon's activities caused that condition.

■■ Pretermitting the contradictory character of plaintiffs' evidence as to when the tractor was taken, May or September of 1973, and when it was repaired, 1972, 1973 or 1974, there was no evidence which indicated how the mere "hot-wiring" of the vehicle by Shannon would have resulted in the "seizing up" of the engine, requiring a major overhaul. A fact cannot be established by circumstantial evidence unless the circumstances are of a nature and so related to each other that the proposed conclusion is the only one that can be drawn; mere conjecture, guess, or suspicion is insufficient. (*Champion v. Knasiak* (1974), 25 Ill. App. 3d 192, 200, 323 N.E.2d 62; *Coulson v. Discerns* (1946), 329 Ill. App. 28, 32, 66 N.E.2d 728.) Assuming, *arguendo*, that their theory of "hot-wiring" was valid, plaintiffs presented no direct or circumstantial evidence from which a conclusion could be drawn that starting the tractor would result in a "seized-up" engine.

■■ ■ Further, there was no presumption that the damage necessarily occurred during Shannon's activities. Shannon testified without contradiction that custody of the tractor was assumed by the Secretary of State's investigator. Robert also asserted that the Secretary of State had moved the tractor from his place of business. It was thus equally inferable that the damage could have occurred during the tractor's removal to the truck pound by the Secretary of State's employee as it was that the damage occurred during Shannon's operations. The existence of a fact may not be

inferred from the evidence when the existence of another fact inconsistent with the first can be inferred with equal certainty from the same evidence. (*Condon v. Schoenfeld* (1905), 214 Ill. 226, 230, 73 N.E. 333; *Wilke Metal Products, Inc. v. David Architectural Metals, Inc.* (1968), 92 Ill. App. 2d 265, 275, 236 N.E.2d 303.) The jury's finding that Shannon's conduct resulted in physical damage to the tractor requiring a major engine overhaul was without evidentiary support and speculative. Judgment notwithstanding the verdict should therefore have been granted.

■■■ Further, plaintiffs failed to show that any torts of Shannon should be imputed to the Bank. A principal is liable for the acts of his agent committed within the scope of the agency; however, he is not liable for the acts of his independent contractor unless the act causing the injury was committed at the direction of the principal or the principal failed to use reasonable care in the selection of the independent contractor. (*Gomien v. Wear-Ever Aluminum, Inc.* (1971), 50 Ill. 2d 19, 21, 276 N.E.2d 336.) Whether a contractor is a servant-agent or an independent contractor is an issue which focuses on the principal's right to control the manner and method in which the work is to be done. Among the indicia utilized to evaluate whether such a right to control exists are the method of payment, right to discharge, the skill required and the furnishing of tools and equipment. (*Gunterberg v. B & M Transportation Co.* (1975), 27 Ill. App. 3d 732, 738, 327 N.E.2d 528.) The evidence here fails to demonstrate that Shannon was employed as a servant-agent of the Bank, rather than as an independent contractor. Robert's testimony was that on September 25, the Bank acknowledged a repossession, and that Wymer had implied that Shannon had damaged the tractor. There was no evidence whatsoever that the Bank had the right to control the manner of Shannon's work; to the contrary, Shannon testified that: he had complete discretion in his operation; he had never been on the payroll of the Bank; he had been self-employed for 20 years; he had always operated without supervision from his clients; and he had used his own tools and equipment during a repossession. Shannon's work for the Bank was on a per-client basis. The evidence, therefore, overwhelmingly shows that Shannon was merely an independent contactor and not a servant-agent.

■■ Plaintiffs argue that because the Bank acquiesced in the assertedly questionable seizure of the trailer then loaded with cargo in which it had no security interest, the Bank would acquiesce in any other questionable activity in which Shannon participated. Therefore, it is urged, the Bank ratified Shannon's actions when he damaged the truck. We fail to see how knowledge by the Bank concerning seized cargo supports the theory that it thereby ratified *any* act a repossessor committed during such a repossession. The Bank correctly notes that the evidence failed to show it was ever aware of any damages to the tractor before the initiation of this

lawsuit. The theory of ratification by the Bank of any tortious actions by Shannon which may have damaged the tractor is devoid of any evidentiary basis, and the compensatory award must be set aside. For the same reason the punitive damages must also be reversed. Not only did the evidence fail to show that Shannon was a servant or agent of the Bank, but the requirements set forth in *Mattyasovszky v. West Towns Bus Co.* (1975), 61 Ill. 2d 31, 36-37, 330 N.E.2d 509, for the vicarious imputation of punitive damages have also not been met, since no evidence was submitted by plaintiffs relating to the Bank's authorization of Shannon's manner of conduct or to Shannon's want of fitness and recklessness of the Bank in hiring him, among other factors.

In view of the foregoing disposition of the appeal in Oscar's case, other contentions urged by the Bank need not be considered or decided.

■■ With regard to Robert's cross-appeal, he claims that since he was not in default, the trailer repossessions were wrongful. Robert relies on his own testimony to the effect that he received an oral extension on the overdue payments from a bank officer. The Bank correctly notes, however, that the jury apparently did not accept Robert's version, particularly in light of the contract provisions requiring all extensions to be in writing. Robert also argues that the Bank violated section 9—504 of the Uniform Commercial Code (Ill. Rev. Stat. 1977, ch. 26, par. 9—504), because he was not first notified of the sale of the trailers. The record does not indicate that it was the Bank that sold the trailers; this statute is therefore inapplicable.

For the reasons set forth above, the verdict rendered in favor of Oscar Lewis for compensatory and punitive damages and the judgment entered thereon is reversed; and the verdict rendered against Robert Lewis and judgment entered thereon is affirmed.

*Reversed in part; affirmed in part.*

STAMOS and DOWNING, JJ., concur.