**INTER–AMERICAN INSURANCE COMPANY OF ILLINOIS, Plaintiff,**

**v.**

**William S. KETCHUM, Jr., Defendant/Cross–Defendant,**

**and**

**Alexander & Alexander Inc., Defendant/Cross–Claimant.**

**No. 89 C 1753.**

United States District Court, N.D. Illinois, E.D.

Oct. 24, 1989.

---

Marvin A. Miller and Patrick E. Cafferty, Chertow & Miller, Chicago, Ill., for plaintiff.

William M. Stevens, Rooks, Pitt & Poust, Cornelius P. Callahan and Thomas L. Hogan, Callahan and Ehret, Chicago, Ill., and William T. Burghart, Fennemore Craig Law Firm, Phoenix, Ariz., for defendants.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

Inter–American Insurance Company of Illinois is exactly that: an insurance company which does business throughout the country, but which is principally located and incorporated in Illinois. One of Inter–American's affiliates is Inter–American Insurance Marketing Company ("IAIMC"), a company which by contrast is a Delaware Corporation. One of IAIMC's offices is in Scottsdale, Arizona.

On July 12, 1985, IAIMC's Scottsdale office entered into a Regional General Agent agreement with William S. Ketchum, Jr., an Arizona resident. Under this contract, Ketchum became an agent of IAIMC, with the authority to solicit and procure applications in Arizona for insurance issued by various insurance companies, which the contract called "Issuing Companies." [1] Ketchum also could contract with other persons, make them

---

1. The identities of the Issuing Companies do not appear in the record. The Regional General Agent agreement refers to a "Schedule of Com-

pensation" which the agreement implies names these companies. No party has submitted this schedule.

agents, and authorize them to solicit business on behalf of IAIMC and the Issuing Companies. The agreement provided that it should be construed in accordance with Illinois law.

After entering into his agreement with IAIMC, Ketchum began drumming up business. Ketchum was licensed in many states, including Illinois. He approached Robert Hoefer, an Iowa-based insurance salesman, in the summer of 1986. Hoefer subsequently applied for appointment as an agent of IAIMC. On the application which he sent to Ketchum, Hoefer indicated that he too held a non-resident license to sell insurance in Illinois. Ketchum reviewed Hoefer's application, approved it, and sent it to IAIMC. IAIMC approved the application, so now Hoefer was in business as Ketchum and IAIMC's agent.

Part of Hoefer's business, like Ketchum's, was to get more agents for IAIMC. Soon after contracting with Ketchum, Hoefer contacted (or else was contacted by, the record is unclear) Alexander and Alexander, Inc. Alexander was a Maryland corporation with its principal place of business in Maryland, but it had an office in Chicago, Illinois. One of Alexander's employees, Donald Wehling, wanted to sell IAIMC products, and so he filled out an application.[2] On the application he stated he was licensed to do business in Illinois, his state of residency; he even attached a copy of his Illinois license to it. Wehling asked IAIMC to apply to the Illinois Department of Insurance to allow him to solicit applications on behalf of "the Issuing Company designated below" on his application. He left the "Issuing Company" boxes on the form unchecked, however, along with the date and the name of his Supervising Agent.

Wehling in Illinois sent his application to Hoefer in Iowa, who in turn sent the form to Ketchum in Arizona. Ketchum reviewed it, signed it, filled in the date in one place, but otherwise left the application intact. He sent it to IAIMC in Scottsdale. IAIMC reviewed the application, approved it, and returned a portion to Ketchum. IAIMC had filled in the effective date of the appointment and had checked one box as "Issuing Company": that for Inter-American Insurance Company of Illinois.

About the same time that Ketchum appointed Hoefer as his agent, but before Alexander applied for a license, Inter-American issued a memo to its agents. The memo warned that the California courts had ruled that in certain instances insurance companies had to cover persons possessing "conditional receipts"—forms which indicate that a person has applied for insurance, but that the insurer has not approved the application. Inter-American believed that the conditional receipts it issued under its so-called "PAL" insurance programs created a risk of liability for the company, and thus Inter-American directed its agents not to take cash with PAL applications or issue conditional receipts for them. Inter-American limited its directions to PAL business written in California only.

On March 20, 1987, a California resident named William Bauleke applied for life insurance under the PAL program. Bauleke was ill, and he may not have been working at the time he applied for insurance—two things which would have disqualified him from coverage. Bauleke nevertheless applied, dating his signature but leaving a space for the place of execution blank. According to Inter-American, Alexander solicited and processed Bauleke's application. Someone (either an Alexander employee or a person higher up the ladder) filled in the place of execution as "Chicago, Illinois."

After receiving the application, Alexander forwarded it along with Bauleke's premium check to Hoefer. Hoefer passed it to Ketchum, who received it on April 3, 1987. Shortly thereafter, Hoefer called Ketchum to inform him that Bauleke had died. Ketchum called IAIMC, who told Ketchum to turn the application and the check over to them.

**2.** It is unclear from the application whether Wehling applied on his own behalf or Alexander's.

Inter–American investigated the matter and concluded that it had to pay out on Bauleke's policy. Inter–American then filed suit in this court against Ketchum and Alexander for breach of contract, breach of fiduciary duty, and negligent misrepresentation.[3] Alexander cross-claimed against Ketchum, alleging that Ketchum failed to inform Alexander of its duties toward Inter–American.

■ Ketchum has moved to dismiss the Complaint and the Cross–Claim under Rule 12(b)(2), Fed.R.Civ.P., for lack of personal jurisdiction. This court has personal jurisdiction over a defendant when the plaintiff properly serves the defendant with process pursuant to a statute or rule, and the service is done with due process. See *Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 104, 108 S.Ct. 404, 409, 98 L.Ed.2d 415 (1987). The burden of proof in establishing personal jurisdiction over the defendant lies with the plaintiff. In considering whether the plaintiff has carried his or her burden, the court may go beyond the pleadings and consider affidavit testimony. The court is to resolve conflicts in the evidence in favor of the plaintiff, however; the plaintiff carries his or her burden of proof for purposes of a motion under Rule 12(b)(2) by making a prima facie showing that jurisdiction exists. See *Nelson by Carson v. Park Industries, Inc.*, 717 F.2d 1120, 1123 (7th Cir.1983); *Weidner Comm. v. H.R.H. Prince Bandar al Faisal*, 859 F.2d 1302, 1306 n. 2 (7th Cir.1988).

This court recently wrestled with a similar question of personal jurisdiction in *Rose v. Franchetti*, 713 F.Supp. 1203 (N.D. Ill.1989). Like the defendant in *Rose*, Ketchum has not objected to the manner in which Inter–American served him. This court will thus assume that service was proper, and will turn to the question of whether Inter–American obtained this service "under the circumstances and in the manner prescribed" by the service-of-process statute of the forum state—again, in this case, Illinois. See Rule 4(e), Fed.R. Civ.P.; *Rose*, 713 F.Supp. at 1206.

The Illinois long-arm statute provides in part:

Any person, whether or not a citizen or resident of this State, who in person or through an agent does any of the acts hereinafter enumerated, thereby submits such person ... to the jurisdiction of the courts of this State as to any cause of action arising from the doing of any of such acts:

(1) The transaction of any business in this State;

(2) The commission of a tortious act within this State....

Ill.Rev.Stat. ch. 110 § 2–209(a) (1987). Inter–American and Alexander contend that service of Ketchum was proper under both subsections of § 2–209(a). They concede that Ketchum personally did not transact business or commit a tortious act in Illinois, but they submit that Alexander, Ketchum's agent, did.

The term "agent" in § 2–209(a) is ambiguous. Ketchum contends that for an agent to submit his principal to the jurisdiction of the Illinois courts, the principal must direct and control the agent's work. Ketchum refers the court to *J.J. & J. Foundation Co., Inc. v. Tommy Moore, Inc.*, 640 F.Supp. 1119 (N.D.Ill.1986). There the court held that it did not have personal jurisdiction over a Texas firm, which an Illinois company had approached to perform cement work in various states including Illinois. The court cited two cases in support of its holding, *Biltmoor Moving & Storage Co. v. Shell Oil Co.*, 606 F.2d 202 (7th Cir.1979), and *Lewis v. Mt. Greenwood Bk.*, 91 Ill.App.3d 481, 46 Ill.Dec. 926, 414 N.E.2d 1079 (1980).

The *J.J. & J.* court did not consider the holding of the Illinois Appellate Court in *Petty v. Cadwallader*, 135 Ill.App.3d 695, 90 Ill.Dec. 518, 482 N.E.2d 225 (1985). There the court ruled that a broad inquiry into the principal's control over the agent was unnecessary to determine whether the

---

3. This court dismissed a common-law fraud count against Alexander under Rule 12(b)(6), Fed.R.Civ.P. See *Inter–American Insurance Co.* *v. Ketchum*, 1989 WL 88382, 1989 U.S.Dist. LEXIS 9023 (N.D.Ill. July 25, 1989).

agent had submitted the principal to the jurisdiction of the Illinois courts. Rather, the agent need have only "the express or implied authority of the principal to perform the acts which give rise to the jurisdiction." The court expressly declined the suggestion that § 2–209(a) required special authorization from the principal to submit himself or herself to the jurisdiction of the court, as the court feared that most principals would deny·such authority to their agents. *Id.* at 698–99, 90 Ill.Dec. 518, 482 N.E.2d 225. See also *Boden Products, Inc. v. Novacham, Inc.*, 663 F.Supp. 226, 229 (N.D.Ill.1987) (following *Petty*).

 Whether principals would deny such authority to their agents, and whether this is a good result, is not certain. These questions may be inconsequential to the proper one: did the Illinois legislature intend § 2–209(a) to cover those agents described by the *Petty* court, or did it want something more? As interesting as this question is, this court need not answer it. This court's duty is to apply the law as the Illinois Supreme Court would. The only indicator of how that court would rule is *Petty*, and this court would be remiss in taking issue with it without some authority from the Illinois courts to the contrary, or a reasonable argument as to why *Petty* cannot be right. See *Morris v. Jenkins*, 819 F.2d 678, 680–81 (7th Cir.1987) (uncontroverted state appellate court decisions and relevant indicators of how the state's highest court would rule, and cannot be ignored). Moreover, the *Petty* rule is consistent with the holding of *Biltmoor*, which noted that where a principal performs part of a contract through an agent, and the agent performs acts as part of this performance which bring the agent under the jurisdiction of the Illinois courts, the agent submits the principal to jurisdiction as well. See *Biltmoor*, 606 F.2d at 206–08.[4]

Inter–American and Alexander thus must make a prima facie showing that (1) Alexander transacted business or committed a tortious act in Illinois; (2) Alexander's acts gave rise to Inter–American or Alexander's present complaints; and (3) Ketchum expressly or impliedly authorized Alexander to perform its actions. It is undisputed that Alexander transacts business in Illinois. The court has previously determined further that if Alexander was Ketchum's agent, and if Ketchum·in turn was Inter–American's agent, then Inter–American could show that Alexander breached a fiduciary duty toward Inter–American. See *Inter–American*, 1989 WL 88382, 1989 U.S.Dist. LEXIS 9023 at 8–10. It is thus possible that Alexander also committed a tort in Illinois,[5] although the court need not decide this issue: Alexander's transaction of business in Illinois is enough.

As for the second question, whether Alexander's transactions gave rise to Inter–American or Alexander's claims against Ketchum, all of the parties (including Ketchum) agree it did: Alexander's Chicago office allegedly solicited and processed the Bauleke application. The court has already ruled that Inter–American has sufficiently alleged that as a result of Alexander's business transactions, Inter–American can claim that Alexander and Ketchum breached a contract with and their fiduciary duty toward Inter–American. See *id.* 1989 WL 88382, 1989 U.S.Dist. Lexis 9023 at 7–10. Thus, the second requirement of *Petty* is met in this case.

The parties' greatest division is over the third element: whether Inter–American and Alexander have made a prima facie showing that Ketchum expressly or impliedly authorized Alexander to transact the business which supports this court's jurisdiction over Ketchum. Inter–American and

---

4. The other case which the *J.J. & J.* court cited, *Lewis*, is inapposite. *Lewis* presented the issue of when a principal may be held liable for the acts of his or her agent. Nothing in it suggests that Illinois's liability principles dictate the construction of the word "agent" in § 2–209.

5. Inter–American and Alexander have not demonstrated that Alexander negligently misrepresented facts to Inter–American, and so they cannot use this alleged tortious act to gain personal jurisdiction over Ketchum. It is *still* unclear who filled in "Chicago, Illinois" as the place of execution of the Bauleke application, and where this act took place.

Alexander have made prima facie showings that: (1) Ketchum's Regional General Agent agreement with IAIMC gave Ketchum the power to appoint agents to solicit business on behalf of IAIMC and the Issuing Companies; (2) pursuant to this power, Ketchum appointed Hoefer to solicit business for IAIMC, and was Hoefer's "Supervising Agent"; (3) pursuant to his authority, Hoefer contacted Alexander to become an agent; (4) Ketchum appointed Alexander and became its Supervising Agent in the solicitation of business for IAIMC, pursuant to his powers as Regional General Agent; (5) PAL life insurance policies were among IAIMC's products; (6) Alexander solicited and processed Bauleke's PAL application. From this the court concludes that Inter–American and Alexander have made a prima facie showing that Ketchum expressly or impliedly authorized Alexander to transact the business which has prompted Inter–American's suit against Ketchum and Alexander. Service of Ketchum was thus legal under the Illinois long-arm statute.

■ This does not end the matter. Inter–American and Alexander must make a further prima facie showing that service of Ketchum was in accord with due process. See *Rose,* 713 F.Supp. at 1211. Inter–American suggests that a holding that service was proper under the Illinois long-arm statute necessarily carries with it a conclusion that the service satisfied due process. Inter–American cites *AM Intern. Leasing v. Nat. Council of Negro Women,* 627 F.Supp. 1302, 1308 (N.D.Ill.1986), for this proposition, but that case in inapposite. The *AM Leasing* court ruled only that where the issue is the amount of activity necessary to meet the "transaction of business" test of § 2–209(a), a finding that a party has transacted enough business in Illinois carries with it a conclusion that the party has had enough contact with Illinois to satisfy due process.[6] Here the question

is different: does Ketchum, a person who personally has not transacted business in Illinois, have enough contact with Illinois to allow Inter–American to serve him properly under the Due Process Clause of the Fourteenth Amendment?[7]

Under the Due Process Clause of the Fourteenth Amendment, a court may not assert jurisdiction over a defendant unless he or she has "certain minimum contacts with [the forum state] such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Internat. Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), quoting *Miliken v. Meyer,* 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940). This court in *Rose* broke the inquiry required under the Due Process Clause into two components: an examination of the quality of the defendant's contacts with the forum state, and a weighing of the reasonableness of the extension of jurisdiction. See 713 F.Supp. at 1212–13. The contacts required under the Due Process Clause must "proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475, 105 S.Ct. 2174, 2184, 85 L.Ed.2d 528 (1985) (emphasis in original), quoting *McGee v. International Life Ins. Co.,* 355 U.S. 220, 223, 78 S.Ct. 199, 201, 2 L.Ed.2d 223 (1957).

A plurality of the Court in *Asahi Metal Industry Co. v. Superior Court,* 480 U.S. 102, 112, 107 S.Ct. 1026, 1033, 94 L.Ed.2d 92 (1987) (O'Connor), presented the strictest test for a "substantial connection" to date. It suggests that the defendant must have done something which reflects an intent or purpose to act in the forum state. Without deciding whether the *Asahi* plurality's test properly states what due process requires, this court finds that Ketchum intended to transact business in Illinois.

---

**6.** Even if *AM Leasing* applied to this case, this court previously has questioned the reasoning reflected in it. See *Rose,* 713 F.Supp. at 1207 n. 4 (Illinois courts have not decided that the scope of § 2–209(a) is narrower than what the Due Process Clause allows).

**7.** This court has previously held that the Fourteenth, rather than the Fifth, Amendment governs whether service in a diversity action is done with due process. See *Rose,* 713 F.Supp. at 1212.

Ketchum was aware that Alexander was operating in Illinois, and he expressly approved Alexander's license to solicit business for IAIMC. Ketchum purposively decided to take responsibility for Alexander's actions, as he signed Alexander's application as the "Supervising Agent" for Alexander. Ketchum's actions toward Illinois were purposeful, and not the product of chance.[8]

■ The court thus must consider whether it would be unreasonable and unfair for this court to have jurisdiction over Ketchum. See *Rose*, 713 F.Supp. at 1213. In deciding this question, the court

> must consider the burden on the defendant, the interests of the forum state, and the plaintiff's interest in obtaining relief. It must also weigh ... "the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies."

*Asahi*, 480 U.S. at 113, 107 S.Ct. at 1033–34 (O'Connor, for the Court), quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292, 100 S.Ct. 559, 564, 62 L.Ed.2d 490 (1980). As was the case for the defendant in *Rose*, the only factor favoring Ketchum is that it will be burdensome for him to litigate in Illinois. The other factors weigh against him. The State of Illinois certainly has an interest in redressing tortious conduct which actually occurs in Illinois, as may have happened here. See *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 776, 104 S.Ct. 1473, 1479, 79 L.Ed.2d 790 (1984) (states have significant interest in exercising jurisdiction over torts committed within the state). The State also has a legitimate interest in regulating business activities within the State. See *Burger King*, 471 U.S. at 479–83, 105 S.Ct. at 2185–88. Ketchum has not challenged Illinois's interest in this matter, nor has he contended that its laws will not accommo-

date his legitimate interests. In light of Ketchum's purposeful, substantial connection with an Illinois resident who allegedly has harmed another Illinois resident, it is his burden to show compelling reasons why jurisdiction is unreasonable in this case. See *id.* at 477, 105 S.Ct. at 2184–85. He has given no reasons, and accordingly, this court's assertion of personal jurisdiction in this case is fair and reasonable.

The court denies Ketchum's motion to dismiss under Rule 12(b)(2), Fed.R.Civ.P.

---

**8.** Two additional contacts stemming from Ketchum's contract with IAIMC further support this conclusion. First, the contract expressly provided for construction under Illinois law—a curious provision, if neither of the parties had any contact with the state. Second, since September
1988 Ketchum purportedly has dealt directly with IAIMC's office in Chicago, not Scottsdale. If true, Ketchum himself may be transacting business in Illinois, although these transactions did not give rise to the cause of action which is before this court.