(No. 87-CC-0364-)

JEAN MABLE WOODRING, Claimant, *v.* THE STATE OF ILLINOIS, Respondent.

*Opinion filed April 8, 1997.*

COOK, SHEVLIN, YSURSA, BRAUER & BARTHOLOMEW (GREGORY SHEVLIN, of counsel), for Claimant.

JIM RYAN, Attorney General (NUVIAH SHIRAZI, Assistant Attorney General, of counsel), for Respondent.

32

## OPINION

JANN, J.

The Claimant, Jean Mable Woodring, brings this action for compensatory damages pursuant to section 8 of the Illinois Court of Claims. (705 ILCS 505/8.) The Claimant asserts that she was injured as a direct and proximate result of negligence committed by the State of Illinois which allegedly resulted in a traffic accident on Interstate 57 in Pulaski County.

At approximately 2:40 p.m. on August 29, 1985, the Claimant was a passenger in a 1977 Impala station wagon driven by John D. Frey, Sr., who was working as a service car driver for the Illinois Department of Public Aid, hereinafter referred to as "the Department." Mr. Frey was

driving the Claimant from a doctor's appointment in Carbondale to the Claimant's home in Cairo. The medical transportation program was a service provided by the Department to recipients of public aid. Claimant was a public aid recipient. After passing one or more vehicles, Mr. Frey's automobile drove off the right side of the road and struck a tree, killing Mr. Frey and injuring the Claimant.

After the accident, the Claimant was taken to Union County Hospital, where she remained for about a month. The Claimant suffered a dislocated left hip, fractured left pelvis, fractured lower right leg, fractured upper left arm, and contusions and lacerations to her chest, abdomen and right elbow. As a result of the injuries, the Claimant continues to suffer pain and has permanent scarring. The Claimant was unable to work for about eight months as a result of her injuries. She is seeking $21,138.02 for medical bills, $6,489.60 in lost wages, and an unknown amount for pain, mental anguish and possible future medical treatment.

The Claimant asserts that the Department was negligent in the following respect:

1. By and through its agent, servant or employee who failed to keep his vehicle under proper control.

2. Failing to adequately screen applicants, including Mr. Frey, for participation in the medical transportation provider program.

3. Failing to remove or revoke Mr. Frey's privileges when the Department knew or should have known that such was necessary to prevent injury to the public aid clients, including the Claimant.

A hearing was held before Commissioner Clark on June 29, 1995, at which there was testimony for the Claimant; Stan Weder, custodian of records for the Illinois

comptroller's office; Richard Branon, a former supervisor of the Department's medical transportation unit; Donna Withrow, executive supervisor of the Department's provider participation unit; Jessie Jean Ratliff, the Claimant's former caseworker at the Department; and Lesley F. Honey, the Department's county administrator for Alexander County. In addition, the Commissioner admitted into evidence the Claimant's medical bills; the Claimant's request to admit and the Respondent's answers; a deposition from Mrs. Ratliff; the Claimant's medical records; the application Mr. Frey submitted to become a provider of medical transportation services; the medical provider agreement between the Department and Mr. Frey; a record of public aid payments made to or on behalf of the Claimant for medical services stemming from the accident; prior approval requests recording the dates on which Mr. Frey drove the Claimant to doctors' appointments; medical records of the Claimant; and portions of a transcript of testimony at an inquest hearing from Robert Peller, a witness to the accident. The parties submitted no briefs.

The Claimant testified that the procedure for receiving medical transportation from the Department was for her, as the client, to call workers at the local office of the Department and tell them that she needed to go to a doctor's appointment. She would tell workers at the office when her appointment was, and the workers would tell her who would take her to and from the appointment. Regarding Mr. Frey, the Claimant testified that she had driven with him before and did not like his driving. She stated that she was afraid of Mr. Frey's driving because he was old (76 years old at the time of the accident) and because he could only use one hand because the other hand was atrophied. The Claimant testified that she told her caseworker, Mrs. Ratliff, of her concerns prior to the accident.

Prior to the accident, the Claimant arranged for transportation from the Department in the way described above. She testified that she was to be taken by a Rev. Oliver on August 29, 1985. However, the day before the Claimant's doctor appointment, the Department called and informed the Claimant's son that Rev. Oliver was unable to take the Claimant and that Mr. Frey would drive her. The Claimant testified that she found out about the change late in the day, and it was too late to get in touch with the Department to get another driver.

The Claimant testified that the trip from Cairo to Carbondale was uneventful and that Mr. Frey committed no traffic violations during that time. The Claimant stated that on the return trip southbound on Interstate 57, a four-lane divided highway, Mr. Frey passed a green truck that was in the right lane. She said Mr. Frey then drove onto the grass on the median, back to the right lane and off the road. The Claimant testified that when Mr. Frey passed the truck, he was driving 62 mph.

Robert Peeler testified that he was driving a green military-type vehicle on Interstate 57 south from Carbondale to Cairo and was traveling at 50-52 mph. Mr. Peeler stated that Mr. Frey's car passed him at approximately 57-58 mph, passed another car in front of him, then ran off the road and struck a tree.

The Claimant was hospitalized for about a month at Union County Hospital, where doctors put a pin in her arm. When the Claimant was released from the hospital, she wore casts on her right leg and left arm and was bedridden. She underwent in-home therapy until January 1986 and then went to therapy in Cape Girardeau until April or May 1986. The Claimant stated that she still has to do exercises and still suffers pain in her right leg, left arm, back and left hip. She testified that her left arm does

not work as well as her right and that she has a five-inch scar on her upper left arm, a one and one-half inch scar on her chest, a half-inch scar on her abdomen and a two-inch scar on her right elbow. The Claimant stated that she also suffers from swelling in her ankle and leg. She said public aid paid for all of her medical and hospital bills from the accident, except for psychiatrist bills.

The Claimant testified that she was an unemployed teacher at the time of the accident. She got a teaching job in 1991 for approximately $5.43 per hour. However, she had to quit that job because her injuries prevented her from climbing stairs. She was able to return to work eight months later.

Stan Weder, custodian of records at the Illinois Comptroller's Office, testified that service car providers, like Mr. Frey, are not considered to be employees of the State. There are no taxes withheld from their checks, they receive no state benefits, they do not receive a W2 income tax form, they are paid from a different fund than employees, and they are paid after submitting bills to the Department.

Richard Branon, former supervisor of the Department's medical transportation unit, also testified that service care providers were not considered employees. He stated that they are paid $7 for the first ten miles driven and 50 cents for each mile after that. The State does not provide cars, gasoline, nor repairs for service car providers. Mr. Branon testified that to become a service car provider, a person must fill out an application, be a licensed driver, and own his or her own vehicle. An applicant does not have to provide proof of insurance to the Department. Furthermore, there are no periodic reviews of providers' performance, and providers do not have to reapply or renew their privileges. Mr. Branon stated that

the Secretary of State's office was the agency charged with dealing with whether drivers have insurance. However, the Secretary of State's Office was not involved with the provider selection process. Mr. Branon did state that if the Secretary of State did not require drivers to have insurance, that would be a concern, and requiring insurance to cover client passengers would be desirable. In addition, Mr. Branon testified that public aid recipients needing transportation to doctors' appointments would schedule their appointments and contact the Department for transportation.

Donna Withrow, executive supervisor of the Department's provider participation unit, also testified that service car providers are considered to be independent contractors and not employees of the State. Ms. Withrow also testified that the medical provider agreement in which service car providers enter into states that providers must comply with federal and state laws. She also stated that there is no review process for providers. She testified that if state statutes required that a service car driver had to meet certain qualifications or get a certain type of insurance, the provider would independently be required to do so himself.

Jessie Jean Ratliff, the Claimant's former caseworker at the Department, testified that the procedure for clients to receive medical transportation was that the client would call his or her caseworker, and the caseworker would tell the client to call the provider. She stated that the Department rarely called providers for clients. Regarding the Claimant, Mrs. Ratliff testified that the Claimant had expressed a concern about Mr. Frey's atrophied hand. However, she stated that she herself was not concerned about Mr. Frey's ability to drive. On cross-examination, Mrs. Ratliff testified that she was never instructed

about any procedure regarding handling complaints about a provider or regarding any problems with providers, but she assumed that she would go to her supervisor. On re-direct, Mrs. Ratliff stated that she did not feel a need to go to her supervisor about the Claimant's comments about Mr. Frey, and that the Claimant had a choice of who would provide medical transportation.

Lesley Honey, former caseworker supervisor, testified that he did not recall any complaints about Mr. Frey's driving. He stated that he might want to know if a client did not feel safe with a certain provider, "but there wouldn't be anything I could necessarily do about it."

In order to recover against the State for negligence, the Claimant must prove by a preponderance of the evidence that the State had a duty to the Claimant, that the Respondent was negligent, that the negligence was the proximate cause of the Claimant's injuries, and that Claimant suffered damages. *Russell v. State* (1990), 42 Ill. Ct. Cl. 83.

The Claimant first asserts the State was negligent through its agent or employee, Mr. Frey. A principal is liable for the acts of his agent committed within the scope of the agency. (*Lewis v. Mount Greenwood Bank* (1st. Dist. 1980), 91 Ill. App. 3d 481, 414 N.E.2d 1079, 46 Ill. Dec. 926.) Whether a contractor is a servant-agent or an independent contractor is an issue which focuses on the principal's right to control the manner and method in which the work is to be done. Among the indicia used to evaluate whether such a right to control exists are the method of payment, right to discharge, the skill required, and the furnishing of tools and equipment. *Id.*

In looking at such indicia in light of the facts of the instant case, it appears that Mr. Frey was an independent contractor. Although there was no evidence presented on

whether the State had a right to discharge Mr. Frey, he was paid from a separate fund from traditional State employees, there were no taxes withheld from his pay, he was paid by the mile and not the hour, and he received no benefits. In addition, Mr. Frey furnished his own car. Therefore, we find that Mr. Frey was not an agent or employee of the State.

Regarding the second and third claims of the Claimant, there are two instances when a principal can be held liable for the acts of an independent contractor. First, if the act causing the injury was committed at the direction of the principal, or, second, if the principal failed to use reasonable care in the selection of the independent contractor, the principal can be held liable. (*Lewis*, 91 Ill. App. 3d at 487.) Regarding the first instance, it is clear in the case at bar that the act that caused Claimant's injury was Mr. Frey driving off of the road and into a tree. The State obviously did not direct Mr. Frey to do this.

Regarding the second instance, this State has adopted the view of the Restatement (Second) of Torts sec. 411, which states:

"An employer is subject to liability for physical harm to third persons caused by his failure to exercise reasonable care to employ a competent and careful contractor.

 (a) to do work which will involve a risk of physical harm unless it is skillfully and carefully done, or
 (b) to perform any duty which the employer owes to third persons."

See *Gomein v. Wear-Ever Aluminum, Inc.* (1971), 50 Ill. 2d 19, 22, 276 N.E.2d 336. In *Gomein*, the Court found that the company that hired an independent contractor to solicit business for the company could be liable for an automobile accident that occurred while the contractor was driving during the course of his solicitations. (*Id.* at 24.) The Court stressed that the operation of an automobile was not an act collateral to the performance of the work

for which the contractor was engaged, but it was part of the conduct directly involved in the performance of the work contracted for. (*Id.*) However, it must be noted that in *Gomein*, the Court reversed dismissal of the complaint. The Court did not decide whether the facts of the case supported a finding of liability.

Considering the facts in the instant case, it is clear that Mr. Frey was directly involved in the performance of the work contracted for when he was driving the Claimant home from the doctor's office. Under the Restatement approach, adopted by the Court in *Gomein*, the State can be held liable for harm to the Claimant caused by the State's failure to exercise reasonable care to employ a competent and careful contractor to do work which will involve a risk of physical harm unless it is skillfully and carefully done or to perform any duty which the employer owes to third persons. Operating an automobile does involve some skill and care. That is why drivers must take examinations and are issued licenses to lawfully drive in the State of Illinois. Furthermore, the State owes a duty to third parties such as the Claimant in that the State is providing a service for public aid recipients and must attempt to make certain that service is rendered with skill and care.

However, the analysis does not end here. A cause of action for negligent hiring must establish that a particular unfitness of an independent contractor creates a danger of harm to a third person which the employer knew, or should have known, when he hired and placed the independent contractor in employment where he could injure others. (*Huber v. Seaton* (2nd Dist. 1989), 186 Ill. App. 3d 503, 508, 542 N.E.2d 464, 134 Ill. Dec. 285, *cert. denied* (1989), 128 Ill. 2d 633, 548 N.E.2d 1069, 139 Ill. Dec. 513.) In addition, the Claimant must also establish a causal relationship between the particular unfitness and

the negligent acts of the agent. (*Id.*) In *Huber*, the Court reversed a jury's verdict against a landlord whom the plaintiffs alleged negligently hired a plumbing contractor who left a valve open on a propane torch which burned down the plaintiffs' home and destroyed their belongings. (*Id.* at 505.) The plaintiffs alleged that the plumber's particular unfitness, of which the landlord should have been aware, was that the plumber was not licensed, as state law required, and that the plumber did not have liability insurance. *Id.* at 506-507.

In the instant case, the Claimant's allegations are similar. Claimant asserts that Mr. Frey's particular unfitness was that he had no liability insurance, as required by state law, and/or that he was an unfit driver because of his atrophied hand and age. Section 601 of Chapter 7 of the Illinois Vehicle Code states that no person shall operate, register or maintain registration of a motor vehicle designed to be used on a public highway unless the motor vehicle is covered by a liability insurance policy. (625 ILCS 5/7-601.) It may be negligent of the State to fail to ascertain whether its independent contractors were in compliance with state law and to fail to have in place some kind of procedure to re-evaluate its medical transportation providers for fitness to drive public aid clients.

However, as the plaintiffs in *Huber* failed to establish that the statutory violation of failing to have a plumbing license was the proximate cause of the plaintiffs' injuries, the Claimant in the instant case failed to establish that either Mr. Frey's lack of insurance or his atrophied hand was the cause of the Claimant's injuries. Certainly it is clear that the failure to have insurance does not cause a driver to run off of a road and strike a tree. Mr. Frey's physical condition could have caused the accident. The State had notice of Mr. Frey's condition in that the Claimant reported to her caseworker that she was afraid to ride

with Mr. Frey because of his hand and his age. However, no evidence—only speculation—was submitted as to whether Mr. Frey's condition was in fact the cause of the accident. The Claimant has failed to prove by a preponderance of the evidence that Mr. Frey's hand or age was the cause of the accident or that he was unfit to drive.

This claim is hereby denied.